ORIGINAL

# SEALED
## BY ORDER OF THE COURT

RICHARD B. EVANS
PETER M. NOTHSTEIN
Trial Attorneys
Public Integrity Section
U.S. Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 353-7760
Facsimile: (202) 514-3003
Email: Richard.B.Evans@usdoj.gov
Email: Peter.Nothstein@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 21 2017
at_____o'clock and _____min._____M.
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF HAWAII

CR 17 - 00550 SOM

| UNTED STATES OF AMERICA | 18 U.S.C. § 371 (Conspiracy); |
|---|---|
| | 18 U.S.C. § 201 (Bribery); |
| v. | 18 U.S.C. §§ 1343, 1346 (Honest |
| | Services Wire Fraud); |
| DUANE NISHIIE, a/k/a | 18 U.S.C. § 1956(h) (Money |
| "SUH JAE HON"; and | Laundering Conspiracy); |
| | 18 U.S.C. § 1001 (False Statement); |
| SEUNG-JU LEE, | 18 U.S.C. § 2 (Aiding and Abetting); |
| | 18 U.S.C. §§ 981(a) & 2461(c) |
| Defendants. | (Forfeiture); |
| | 18 U.S.C. § 3238; 18 U.S.C. § 3287 |

## INDICTMENT

### THE GRAND JURY CHARGES:

All dates and times in this Indictment are alleged to be "on or about" the specific date or

time stated. At all times relevant to this Indictment:

### GENERAL ALLEGATIONS

#### Department of Defense Contracting in the Republic of Korea

1. The United States Army Corps of Engineers ("USACE") was a department and

agency within the executive branch of the United States government. USACE was a division of

the United States Army, and a component of the United States Department of Defense ("DOD"), and employed both uniformed military and civilian personnel.

2.      USACE was an agency responsible for providing engineering, design, construction, and management services for military and civilian infrastructure and operations in the United States and abroad.

3.      USACE operated in foreign countries pursuant to agreements established between the United States government and those countries. In the Republic of Korea ("Korea"), USACE provided DOD with engineering and construction services through its Far East District branch office ("FED"), located in Seoul, Korea.

4.      Beginning in or about 2005, the United States government and the Korean government planned and began to execute a program to relocate and consolidate United States military bases and installations located in Korea. As part of this multibillion-dollar relocation program, the United States government agreed to expand Camp Humphreys, a large military installation located near the Korean city of Pyongtaek.

5.      The United States government designated FED as the primary agency responsible for managing and executing construction and infrastructure projects at the expanded Camp Humphreys. The Korean government designated its Ministry of Defense to work alongside FED in managing this project.

6.      In the course of executing the base relocation and Camp Humphreys expansion, FED was responsible, alongside the Korean Ministry of Defense, for awarding infrastructure and construction contracts to private companies.

7.      Defendant **DUANE NISHIIE**, a/k/a Suh Jae Hon, is a United States citizen whose last known residence is in the District of Hawaii. From in or about 2006 through in or about 2012,

NISHIIE worked as a contracting officer for FED in Korea. As a contracting officer for FED, NISHIIE was a public official and owed a fiduciary duty to provide honest services to the United States and the DOD.

8.      Defendant **SEUNG-JU LEE** is a citizen of the Republic of Korea whose last known residence is in Korea. LEE is not believed to have ever resided in the United States. LEE is a former officer in the Korean Ministry of Defense's procurement arm.

Company A and U.S. Government Contracts

9.      Company A is a large multinational corporation based in Korea. Company A provides engineering and construction services in Korea and elsewhere.

10.     Beginning in or about 2008 and continuing through in or about 2014, Company A sought to obtain and obtained engineering and construction contracts related to the Camp Humphreys expansion worth hundreds of millions of U.S. dollars. These contracts were awarded by FED and other agencies of the Korean and United States governments.

11.     In or about 2008, FED, alongside the Korean Ministry of Defense, managed the process for awarding an infrastructure and engineering contract covering Land Development, Utilities, and Infrastructure ("LDUI") for Parcel 2A, a large area within the expanded Camp Humphreys. Company A submitted a bid to obtain the LDUI contract in November 2008. In or about December 2008, FED awarded the LDUI contract, worth over 460,000,000,000 Korean won, or approximately $400,000,000, to Company A.

12.     In or about 2010, FED, alongside the Korean Ministry of Defense, managed the process for awarding a contract for construction of a project management office at Camp Humphreys, referred to as Joint Task Order 16 ("JTO-16"). Company A submitted a bid to obtain

3

JTO-16 in March 2010.  In or about May 2010, FED awarded the JTO-16 contract, worth approximately 6,575,005,169 won, or approximately $6,000,000, to Company A.

13.     The LDUI and JTO-16 contracts involved the acquisition, care, handling, custody, control or disposition of any real and personal property of the United States.

## COUNT ONE
## 18 U.S.C. § 371 – Conspiracy

14.     From in or about 2008 through in or about 2015, in the Republic of Korea, the District of Hawaii and elsewhere, defendants,

### DUANE NISHIIE and
### SEUNG-JU LEE,

and others known and unknown to the grand jury, including Company A, knowingly and unlawfully combined, conspired, confederated and agreed to commit the following offenses against the United States

a.  for a public official to directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept anything of value personally and for any other person and entity, in return for being influenced in the performance of any official act, in violation of 18 U.S.C. § 201(b)(2);

b.  to devise and intend to devise a scheme and artifice to defraud and deprive the citizens of United States and the DOD of their right to the honest services of NISHIIE, a contracting officer for FED, through bribery, in violation of 18 U.S.C. §§ 1343 and 1346.

## PURPOSE OF THE CONSPIRACY

15.     It was a purpose of the conspiracy for NISHIEE and LEE to enrich and benefit themselves by soliciting and accepting money from Company A in exchange for taking and

4

agreeing to take official action to benefit and help Company A obtain tens of millions of dollars in government contracts.

16.     It was also a purpose of the conspiracy for Company A to enrich and benefit itself and to obtain and expand its business with FED by paying NISHIIE and LEE in exchange for NISHIIE taking and agreeing to take official action to benefit Company A.

## MANNER AND MEANS OF THE CONSPIRACY

17.     To further the objects and goals of the conspiracy, NISHIIE, LEE, and their co-conspirators used the following manner and means, among others:

a.   NISHIIE and LEE solicited, accepted, and agreed to accept bribes from Company A in exchange for NISHIIE's official actions to influence and direct the award of DOD contracts to Company A;

b.   NISHIIE prepared several memoranda favoring and promoting Company A's LDUI bid, sought Company A's response to an unfavorable audit of its capabilities but did not seek responses from other potential bidders who received unfavorable audit ratings, submitted Company A's audit response to other officials in support of the bid, advised other officials tasked with evaluating the LDUI bids that Company A was the most qualified bidder, and advised them to award the bid to Company A;

c.   NISHIIE proposed and advised other public officials at FED to use U.S. contracting regulations instead of Korean contracting regulations for the award of JTO-16 over concerns raised by the project management consortium, so as to favor Company A's efforts to obtain the contract for JTO-16. NISHIIE also directed the project management consortium to include Company A in the list of companies to receive JTO-16 bid solicitations, and certified, on behalf of FED, that the selection of Company A's bid for JTO-16 complied with U.S. contracting regulations;

d.   NISHIIE and LEE created companies which they used to receive bribe payments from Company A, entered into sham subcontracting agreements with Company A so as to disguise bribe payments as legitimate business revenue, transferred proceeds of bribe payments among accounts in LEE's name and in the names of NISHIIE's associates but used and controlled by NISHIIE, and in sum received and distributed over $2,800,000 in bribe payments to themselves, co-conspirators, and others;

e.   NISHIIE and LEE concealed and attempted to conceal their crimes by, among other things, using Korean bank accounts to hide the bribes and corrupt payments

accepted by NISHIIE; by using Korean bank accounts in the names of other co-conspirators; and by hand-delivering cash to co-conspirators; and

f. NISHIIE concealed and attempted to conceal their crimes by making false statements on his annual financial disclosure forms, encouraging potential witnesses to mislead and make false statements to investigators and by suppressing and destroying, and encouraging others to suppress and destroy, evidence related to the conspiracy.

## OVERT ACTS

18.   In furtherance of the conspiracy and in order to accomplish its objects, defendants NISHIIE, LEE, and their co-conspirators committed the following overt acts, among others, in Korea, the District of Hawaii and elsewhere.

### NISHIIE Performed Official Acts to Direct the Parcel 2A LDUI Contract to Company A

19.   On or about September 5, 2008, NISHIIE prepared and submitted a "Source Selection Plan, Phase I" memo to his superiors at USACE, outlining a proposed process for soliciting bids for the LDUI contract.

20.   Between in or about September 2008 and in or about December 2008, LEE attended meetings of FED's source selection committee as a representative of the Korean Ministry of Defense.

21.   On or about September 18, 2008, NISHIIE prepared and submitted a "Source Selection Decision Memorandum" to his superiors at USACE, narrowing the number of eligible bidders for the LDUI contract from twelve companies to five, to include Company A.

22.   On or about October 9, 2008, NISHIIE prepared and submitted a "Source Selection Plan, Phase II" memo to his superiors at USACE, outlining a proposed process for soliciting eligible bids for the LDUI contract.

6

23.     On or about November 26, 2008, NISHIIE received a letter in which Company A stated its formal interest in bidding for the LDUI contract. In or about November 2008, Company A submitted a bid to FED for the LDUI contract.

24.     On or about December 10, 2008, Company A's representatives participated in an oral presentation to FED in support of its bid for the LDUI contract. NISHIIE and LEE attended this presentation in their official capacities.

25.     In or about December 2008, the Defense Contracting Audit Agency (DCAA) conducted an audit of the five companies bidding for the Parcel 2A contract, including Company A, which received a rating of "unfavorable" due to Company A's financial difficulties. Aware of Company A's impending "unfavorable" audit rating, NISHIIE requested an advance draft copy of the audit report, but was denied the report by DCAA.

26.     In or about December 2008, NISHIIE obtained a copy of Company A's response to DCAA's financial audit and included the preemptive response, without including the DCAA audit findings, in his recommendation advising the Source Selection Committee to award the contract for Parcel 2A to Company A. NISHIIE neither sought nor included audit responses from the other four bidders.

27.     On or about December 19, 2008, NISHIIE drafted a memorandum which described the oral presentation favorably and noted "no significant weaknesses in [Company A's] Oral Presentation," knowing and intending that the memorandum would form the basis for the award of the LDUI contract to Company A.

28.     On or about December 19, 2008, NISHIIE prepared a "Source Selection Decision" memo for his superiors, knowing and intending that the memo would form the basis for awarding the LDUI contract to Company A.

7

29.    In or about December 24, 2008, NISHIIE prepared a "Source Selection Memorandum" for his superiors, outlining the strengths and weaknesses of the five bidders, including Company A, which was the only bidder to receive a rating of "Excellent" in every category and, across the board, was found to have had "no significant weaknesses," despite the "unfavorable" DCAA audit finding.   NISHIIE's Source Selection Memorandum ultimately recommended the award of the LDUI contract to Company A.  NISHIIE used his official position to advise the Source Selection Committee to award the LDUI contract to Company A, knowing and intending that his advice would form the basis of the Committee's decision to award the contract to Company A.

30.    On or about December 24, 2008, FED awarded the LDUI contract to Company A.

### NISHIIE Performed Official Acts to
### Direct the JTO-16 Contract to Company A

31.    In or about 2009, NISHIIE caused the solicitation of bids for JTO-16, a U.S. government contract for the construction of the Camp Humphreys project management office.

32.    NISHIIE served as the primary U.S. government official supervising the solicitation of bids and award of the contract related to JTO-16.

33.    In or about December 2009, NISHIIE advocated verbally and in writing to the Project Management Consortium ("PMC"), a joint U.S.-Korean office created to administer the Camp Humphreys construction projects and which was supervising the solicitation of bids for JTO-16, to use U.S. government acquisition regulations instead of Korean acquisition regulations. U.S. acquisition regulations allow for the use of "sole source bidding," but Korean regulations do not.

8

34.     NISHIIE aggressively advised the use of sole source bidding under U.S. government regulations as a qualifying step to ensure that if Company A was the sole bidder for JTO-16, it could still win the contract.

35.     In or about January 2010, NISHIIE specifically requested that the PMC include Company A among the seven companies to receive the Request For Statement of Interest in JTO-16 from the PMC.

36.     In or about February 2010, NISHIIE reduced the time for responding to the Request For Statement of Interest from the normal 7-10 days to only three days, in order to narrow the group of potential bidders competing with Company A.

37.     NISHIIE certified that despite Company A being the sole bidder for the JTO-16 contract, there existed "adequate" price competition under U.S regulations. Without this certification, Company A could not have been awarded the JTO-16 contract.

38.     On or about May 4, 2010, NISHIIE wrote a formal letter of concurrence to PMC, consenting to the award of the JTO-16 contract to Company A.

## NISHIIE Received Bribes in Exchange for Performing Official Acts to Direct Contracts to Company A

39.     NISHIIE and LEE solicited, accepted, and agreed to accept payments from Company A in exchange for NISHIIE's official acts in steering the LDUI and JTO-16 contracts to Company A.

40.     NISHIIE and LEE solicited and accepted payments from Company A in cash and through two companies they created: the Pacific Advisory Group ("PAG") and S&Teoul.

### Cash Payments

41.     Between 2009 and 2012, NISHIIE received over $1,000,000 in cash from Company A and other sources.

9

## Pacific Advisory Group

42.     In or about 2009, NISHIIE and LEE created PAG for the purpose of providing engineering and consulting services related to the Camp Humphreys expansion, and in part, to conceal the origin of bribe payments from Company A.  At this time, NISHIIE was still employed by FED.

43.     In or about 2009, NISHIIE and LEE convened a dinner meeting with other employees of FED and the Korean government to discuss the creation of PAG.  At the dinner, NISHIIE and LEE stated that PAG's profits would be divided among the individuals present at the dinner, with NISHIIE and LEE receiving the largest shares.

44.     At the dinner, NISHIIE and LEE stated that one of PAG's objectives would be to influence the award of JTO-16.

45.     NISHIIE and LEE distributed debit cards to those in attendance.  The debit cards were preloaded with 1,000,000 won, or approximately $1,000, which was refreshed on a monthly basis.

46.     In support of PAG's business, NISHIIE, LEE, and others exchanged emails about obtaining consulting business for PAG.

47.     LEE stated to Person 1 that NISHIIE had decided to steer the JTO-16 contract to Company A, instead of another Korean company that intended to submit a bid for the contract.

48.     In or about 2012, LEE distributed thousands of dollars to PAG members.  LEE gave Person 1 20,000,000 won, or approximately $20,000, and offered 30,000,000 won, or approximately $30,000, to Person 2, who rejected the offer of payment.  LEE told Person 1 that the 20,000,000 won had come from Company A.

10

### S&Teoul

49.     In or about March 2009, LEE created S&Teoul, a construction subcontractor owned and managed by LEE.   NISHIIE and LEE used S&Teoul to obtain bribe payments from Company A and direct them to members of the conspiracy.

50.     Company A employed multiple subcontractors as part of the LDUI project. Company A entered into subcontract agreements with S&Teoul which stated that S&Teoul would perform work on the LDUI project, but in truth S&Teoul did no such work.

51.     As part of the subcontract agreements, Company A sent S&Teoul over 2,850,000,000 won, equivalent to over $2,800,000, between 2009 and 2012.  During that same time period, S&Teoul transferred over 1,605,000,000 won, equivalent to over $1,600,000, to accounts controlled by LEE and NISHIIE.

52.     LEE was the manager and operator of S&Teoul at the time it received payments from Company A.

### Concealment of the Conspiracy and Attempts to Destroy Information

53.     Defendants NISHIIE, LEE, and their co-conspirators concealed, and attempted to conceal, their illegal proceeds and activates by purchasing real estate, using bank accounts held in others' names, making false statements on legally-required forms, destroying evidence, and encouraging witnesses to mislead investigators and to destroy evidence.

### Real Estate

54.     NISHIIE used the proceeds of his activity to purchase real estate in Korea, often in the names of other individuals.

55.     NISHIIE used accounts in the name of Person 3, a Korean national, to pay for expenses, including mortgage payments and insurance premiums, related to the real estate he purchased in Korea.

Bank Accounts

56.     NISHIIE maintained several bank accounts in other individuals' names, and used these bank accounts in order to effectuate and launder bribe payments from Company A to himself without using his real name.

57.     NISHIIE used the bribe payments for his own personal purposes, including funneling more than $300,000 of these proceeds to two Korean women with whom he maintained intimate relationships.

58.     In or about January 2009, NISHIIE asked for and obtained Person 3's permission for NISHIIE to use Person 3's account with Korea-based Kookmin Bank.  NISHIIE used Person 3's Kookmin Bank account from in or about 2009 through in or about July 2011.

59.     In or about May 2009, NISHIIE asked for and obtained Person 3's permission for NISHIIE to use Person 3's account with Korea-based Shinhan Bank.  NISHIIE used Person 3's Shinhan Bank account from in or about 2009 through in or about July 2011.

60.     In or about October 2009, NISHIIE asked for and obtained Person 3's permission for NISHIIE to use Person 3's account with Korea-based Woori Bank.  NISHIIE used Person 3's Woori Bank account from in or about 2009 through in or about July 2011.

61.     NISHIIE also used two bank accounts registered in LEE's name between 2009 and 2012.  These bank accounts were registered at Korea-based Hana Bank.

62.     NISHIIE used these bank accounts to deposit more than $1,000,000 in payments received from Company A.

12

63.     NISHIIE frequently deposited tens of thousands of dollars into these accounts and then withdrew the money shortly thereafter.

64.     NISHIIE often moved money between accounts he controlled in LEE's name and accounts he controlled in Person 3's name.

65.     NISHIIE structured these transactions to evade detection.  For example, on or about March 19, 2010, three days before the deadline for bids for JTO-16, NISHIIE deposited approximately $60,000 in cash into the Shinhan Bank account he controlled.  NISHIIE divided this $60,000 among thirteen individual deposits.

66.     In or about 2012, NISHIIE resigned his position at FED and accepted employment with Company A.  From in or about 2012 through in or about 2014, NISHIIE was employed by Company A and lobbied DOD officials on behalf of a housing construction project which Company A sought to build near Camp Humphreys.

False Statements

67.     NISHIIE was required by the Ethics in Government Act of 1978 to submit a yearly Financial Disclosure Report known as an "OGE-450."  This OGE-450 form, which NISHIIE submitted electronically, required NISHIIE to declare any non-investment income, assets, liabilities, outside positions, agreements or arrangements, and gifts and travel reimbursements obtained by NISHIIE.  In reports NISHIIE filed from 2009 to 2012, he did not disclose his membership in PAG, or his outside arrangements with Company A or his co-conspirators.  In making each submission, NISHIIE agreed: "I CERTIFY that the statements I have made on this form and all attached schedules are true, complete and correct to the best of my knowledge and belief."

13

68.     On or about September 15, 2011, NISHIIE submitted "1040" forms to the Internal Revenue Service, certifying his income tax obligations for the 2009 and 2010 tax years. NISHIIE omitted any mention of PAG, his outside arrangements with Company A or his co-conspirators, the income he had obtained as a result of the conspiracy, or his interest in foreign bank accounts.

69.     NISHIIE failed to file "1040" forms for the 2011, 2012, and 2013 tax years.

## Obstructive Acts

70.     In or about January 2015, NISHIIE contacted Person 3 by telephone, and instructed Person 3 to mislead federal investigators about the nature of the deposits into the bank accounts registered to Person 3's name, which NISHIIE had used as his own over the past several years.

71.     In or about 2015, NISHIIE conveyed a message to Person 3 that if approached by law enforcement, Person 3 should falsely state that any deposits from LEE's account into Person 3's accounts were a loan from LEE, and that NISHIIE was unconnected to the deposits.

72.     NISHIIE deleted emails related to PAG and Company A from his email accounts and after becoming aware of the investigation, encouraged others, including Person 3 and Person 4, to do the same.

73.     On April 1, 2015, shortly after learning of an investigation into the conspiracy, Company A informed its employees that they should destroy and discard documents by April 17, 2015.

74.     Employees of Company A, acting in their official capacity, destroyed documents related to the LDUI contract and payments Company A made to S&Teoul.

All in violation of Title 18, United States Code, Sections 371, 3238, and 3287.

14

## COUNT TWO
### 18 U.S.C. §§ 2, 201(b) – Receiving a Bribe by a Public Official

75.     Paragraphs 1-74 are incorporated by reference as though fully set forth herein.

76.     From in or about September 2008 and continuing through to in or about May 2012, in the Republic of Korea and elsewhere, the defendants,

**DUANE NISHIIE and**
**SEUNG-JU LEE,**

did directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept anything of value personally and for any other person and entity, in return for NISHIIE, a public official, being influenced in the performance of any official act, and aided and abetted the same; that is, NISHIIE, and others on NISHIIE's behalf, accepted money and other things of value from Company A, in exchange for performing official acts associated with the award of DOD contracts to Company A.

All in violation of Title 18, United States Code, Sections 201(b)(2), 2, 3238, and 3287.

15

## COUNTS THREE, FOUR, AND FIVE
### 18 U.S.C. §§ 1343, 1346 – Honest Services Wire Fraud

77.    Paragraphs 1-74 are incorporated by reference as though fully set forth herein.

78.    From in or about 2008 and continuing through in or about 2015, in the Republic of

Korea and elsewhere, the defendants,

### DUANE NISHIIE and
### SEUNG-JU LEE,

and others known and unknown to the grand jury, devised and intended to devise a scheme and

artifice to defraud the United States, including the DOD and its components of their intangible

right to the honest services of NISHIIE through bribery and kickbacks; to wit, on or about the dates

set forth below, in the Republic of Korea and elsewhere, the defendant, NISHIIE, for the purpose

of executing and attempting to execute the scheme and artifice to defraud and deprive, transmitted

and caused to be transmitted by means of wire communications in interstate and foreign commerce

the following writings, signals, pictures and sounds:

| COUNT | DATE | NATURE OF WIRE |
|-------|------|----------------|
| 3 | September 18, 2008 | E-mail from NISHIIE to other FED officials |
| 4 | March 20, 2009 | E-mail from NISHIIE to Person 1 and Person 2 |
| 5 | April 6, 2010 | E-mail from NISHIIE to another FED official |

All in violation of Title 18 United States Code, Sections 1343, 1346, 2, 3238, and 3287.

16

## COUNT SIX
### 18 U.S.C. § 1956(h) – Conspiracy to Launder Monetary Instruments

79. Paragraphs 1-74 are incorporated by reference as though fully set forth herein.

80. From in or about 2008 through in or about 2013, in the Republic of Korea and elsewhere, the defendants,

**DUANE NISHIIE and
SEUNG-JU LEE,**

did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the grand jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), to wit: to knowingly conduct and attempt to conduct a financial transaction which in fact involved the proceeds of specified unlawful activity, knowing that the transaction is designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, that is, bribery, in violation of Title 18, United States Code, Section 201, and wire fraud in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Sections 1956(h), 3238, and 3287.

**COUNT SEVEN**
**18 U.S.C. § 1001 – False Statement**

81.     Paragraphs 1-74 are incorporated by reference as though fully set forth herein.

82.     On or about the February 9, 2010, in the Republic of Korea and elsewhere, the defendant,

**DUANE NISHIIE,**

did willfully and knowingly make and caused to be made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: failing to disclose all reportable assets, sources of income, and outside position, as required on the Confidential Financial Disclosure Report (Office of Government Ethics Form 450).

All in violation of Title 18, United States Code, Sections 1001 and 2.

## COUNT EIGHT
### 18 U.S.C. § 1001 – False Statement

83.     Paragraphs 1-74 are incorporated by reference as though fully set forth herein.

84.     On or about the January 18, 2011, in the Republic of Korea and elsewhere, the defendant,

### DUANE NISHIIE,

did willfully and knowingly make and caused to be made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: failing to disclose all reportable assets, sources of income, and outside position, as required on the Confidential Financial Disclosure Report (Office of Government Ethics Form 450).


All in violation of Title 18, United States Code, Sections 1001 and 2.

19

## COUNT NINE
## 18 U.S.C. § 1001 – False Statement

85.     Paragraphs 1-74 are incorporated by reference as though fully set forth herein.

86.     On or about the January 13, 2012, in the Republic of Korea and elsewhere, the defendant,

### DUANE NISHIIE,

did willfully and knowingly make and caused to be made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: failing to disclose all reportable assets, sources of income, and outside position, as required on the Confidential Financial Disclosure Report (Office of Government Ethics Form 450).


All in violation of Title 18, United States Code, Sections 1001 and 2.

## FORFEITURE NOTICE

1.     The allegations contained in Counts One through Six of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and (C) and 982(a)(1) and Title 28, United States Code, Section 2461(c).

2.     Upon conviction of an offense set forth in Counts One through Five of this Indictment, the defendants,

**DUANE NISHIIE and**
**SEUNG-JU LEE,**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable said offense:

3.     Additionally, upon conviction of the offense set forth in Count Six of this Indictment, the defendants,

**DUANE NISHIIE and**
**SEUNG-JU LEE,**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 982(a)(1) and 981(a)(1)(A) and Title 28, United States Code, Section 2461(c), all property, real and personal, involved in such offense and all property traceable to such property.

4.     If, as a result of any act or omission of a defendant, any property subject to forfeiture

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

/s/ FOREPERSON
FOREPERSON OF THE GRAND JURY

ANNALOU TIROL
ACTING CHIEF
PUBLIC INTEGRITY SECTION

By: 

RICHARD B. EVANS
PETER M. NOTHSTEIN
TRIAL ATTORNEYS
PUBLIC INTEGRITY SECTION