RICHARD B. EVANS
PETER M. NOTHSTEIN
ERICA O'BRIEN WAYMACK
Trial Attorneys
Public Integrity Section
U.S. Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 353-7760
Facsimile: (202) 514-3003
Email: Richard.B.Evans@usdoj.gov
Email: Peter.Nothstein@usdoj.gov
Email: Erica.O'Brien.Waymack@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| UNTED STATES OF AMERICA<br><br>v.<br><br>**DUANE NISHIIE,**<br><br>Defendant. | 17-CR-00550-SOM |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR VIOLATION OF THE STATUTE OF LIMITATIONS

The United States of America, by and through undersigned counsel, respectfully submits the following Opposition to Defendant Duane Nishiie's Motion to Dismiss the Indictment for Violation of the Statute of Limitations [Dkt. 89]. Contrary to the defendant's assertion, the charges against him are not barred by the

statute of limitations because the applicable statute of limitations in this case is tolled by the Wartime Suspension of Limitations Act (WSLA).

Accordingly, the government respectfully requests that the Court deny defendant's motion to dismiss in its entirety.

## BACKGROUND

On September 21, 2017, a grand jury in the District of Hawaii returned an Indictment under seal charging the defendant with one count of conspiracy in violation of Title 18, United States Code, Section 371, one count of bribery in violation of Title 18, United States Code, Section 201, three counts of honest services wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346, one count of money laundering conspiracy in violation of Title 18, United States Code, Section 1956(h), three counts of making a false statement in violation of Title 18, United States Code, Section 1001, and aiding and abetting in violation of Title 18, United States Code, Section 2. The Indictment alleges that the defendant, while serving as a contracting officer for the Army Corps of Engineers, Far East District, from 2006 to 2012 in the Republic of Korea, engaged in various official acts in order to unlawfully steer two contracts related to the Yongsan Base Relocation Project (YRP), which were valued at more than $400 million, to SK Engineering & Construction (SK), a Korean company, in exchange for millions of dollars in bribes. These official acts included, among many other actions, selecting

eligible bidders, providing advice regarding the contract selection process, and drafting memoranda and advising regarding the contract awards. The defendant's bribery scheme began in 2008, and continued through at least 2012.

The matter is scheduled for trial on February 11, 2020.

## ARGUMENT

Most federal criminal offenses are bound by a five-year statute of limitations. 18 U.S.C. § 3282(a) (2003). However, "when the United States is at war or Congress has enacted a specific authorization for the use of the Armed Forces," the WSLA supersedes the typical statute of limitations requirement. 18 U.S.C. § 3287 (2009). Under the WSLA, the statute of limitations for (1) crimes involving "fraud or attempted fraud against the United States," (2) crimes "committed in connection with the acquisition . . . control or disposition of any real or personal property of the United States," or (3) crimes "committed in connection with the negotiation, procurement, award . . . or other termination or settlement, of any contract, subcontract . . . or with any disposition of termination inventory by any war contractor or Government agency" is suspended until five years after the termination of hostilities as proclaimed by the President or Congressional resolution. *Id.* The WSLA further dictates that the term "war" includes "a specific authorization for the use of the Armed Forces…". *Id*.

Two separate congressional Authorizations for the Use of Military Force are currently in effect, each triggering the suspension of limitations under the WSLA. First, in 2001, Congress authorized the use of military force against "those responsible for the [September 11, 2001] attacks launched against the United States," resulting in the deployment of U.S. troops to Afghanistan. Authorization for the Use of Military Force, 115 Stat. 224 (2001). A year later, in 2002, Congress authorized the use of military force in Iraq. Authorization for Use of Military Force Against Iraq Resolution of 2002, 116 Stat. 1498 (2002).

The Ninth Circuit recently affirmed the tolling of the statute of limitations in a prosecution of a government contractor that engaged in business with the Army Reserve, holding that the Authorization for Use of Military Force Against Iraq Resolution of 2002 triggered the WSLA. *United States v. Jucutan*, 756 Fed.Appx. 691 (9th Cir. 2018). Other circuits have also considered the WSLA's applicability to Congress's 2001 and 2002 authorizations for use of force. Those circuits have all held that these authorizations are sufficient to trigger the WSLA's tolling of the statute of limitations. *See, e.g.*, *United States v. Meléndez–González*, 892 F.3d 9, 14–15 (1st Cir. 2018) (holding the WSLA was triggered by authorization of force for September 11 attacks and authorization of force for Iraq); *United States v. DeLia*, 906 F.3d 1212, 1218 (10th Cir. 2018) (same); *United States v. Frediani*, 790 F.3d 1196, 1200 (11th Cir. 2015) (same); *United States ex rel. Carter v. Halliburton Co.*,

4

710 F.3d 171, 179 (4th Cir. 2013) (same), *rev'd, in part, on other grounds, Kellogg Brown & Root Serv., Inc. v. United States ex rel. Carter*, 135 S.Ct. 1970, 1976 (2015); *United States v. Pfluger*, 685 F.3d 481, 485 (5th Cir. 2012) (same). Indeed, the defendant's own motion to dismiss acknowledges that both the Fourth and Fifth Circuits have recently upheld the applicability of the WSLA based on the 2001 and 2002 Authorizations for the Use of Military Force. Dkt. 89 at 9.

Neither the President nor Congress has taken official action to end the use of force as authorized by the 2001 and 2002 resolutions, and thousands of U.S. troops remain in both Iraq and Afghanistan. Over various challenges by defendants suggesting that the hostilities in Afghanistan and Iraq have ended, circuit courts have held that the language of the WSLA requires an official proclamation declaring the end of hostilities. *See* 18 U.S.C. § 3287; *DeLia*, 906 F.3d at 1218; *Carter*, 710 F.3d at 179; *Pfluger* 685 F.3d at 485. Those same courts have recognized that no official proclamation by the President or Congress has ended hostilities related to either the 2001 or 2002 authorizations for the use of force. *See DeLia*, 906 F.3d at 1218; *Carter*, 710 F.3d at 179; *Pfluger* 685 F.3d at 485. Because there has been no official proclamation terminating these authorizations and because the conflicts are ongoing, the WSLA was still in effect at the time the defendant committed his crimes and remains in effect today.

The crimes with which the defendant is charged undoubtedly fall under the purview of the WSLA.  The WSLA is intended to suspend the statute of limitations for "offenses *involving the defrauding of the United States or any agency thereof*, whether by conspiracy or not, and *in any manner*, but only where the fraud is of a pecuniary nature or at least of a nature concerning property."  *Bridges v. United States*, 346 U.S. 209, 216 (1953) (emphasis added).  Specifically, the fraud against the government should be "an essential ingredient of the crime."  *Id.*  Notably, the Supreme Court did not hold that the offenses implicated by the WSLA be offenses with the term "fraud" in the title; rather, the Court explicitly stated that the offense must only "involve" fraud "in any manner" of a pecuniary nature.  *Id.*  That same year, in a separate opinion implicating the WSLA, the Supreme Court further clarified that "Congress sought by its phrase 'involving fraud … in any manner' to make the [WSLA] applicable to all offenses which are fairly identifiable as those in which fraud is an essential ingredient, by whatever words they be defined, and that Congress did not seek to limit its applicability to such of those identifiable offenses as also are labeled with a particular symbol."  *U.S. v. Grainger*, 346 U.S. 235, 244 (1953).

In the instant matter, each of the charges contained in the indictment stem from the same set of facts, namely, that the defendant conspired to award two separate contracts for military base construction, worth at least $457,000,000, to SK,

and that the defendant did this to line his own pockets with cash paid by SK in exchange for the contracts. The charges of conspiracy to defraud the United States, bribery, honest services wire fraud, money laundering, and making false statements all arise out of the defendant's scheme to defraud the federal government by accepting bribes from a foreign corporation in exchange for steering federal contracts to the corporation, and then concealing or making false representations about the bribes received. The fraud committed against the federal government is an essential ingredient to each of these offenses and is indeed the overarching theme of the indictment. Thus, contrary to the defendant's assertion, the WSLA applies to all of the charges he faces, even those that do not explicitly state "fraud" in the title.

Moreover, the offenses at issue need not be directly related to the authorization of force that triggered the WSLA. *See, e.g.*, *Grainger*, 346 U.S. at 237, 241–45 (1953) (holding that the WSLA, as triggered by the 1941 and 1942 Declarations of War for World War II, applied to false claims for wool purchases from a federal agency with no discernible connection to the war effort); *Meléndez–González*, 892 F.3d at 13–14 (holding that the WSLA, as triggered by 2001 and 2002 authorizations of force, applied to fraudulent scheme to obtain military recruitment bonuses); *Frediani*, 790 F.3d at 1198, 1200 (holding that the WSLA, as triggered by 2001 and 2002 authorizations of force, applied to scheme in which defendant falsely certified that aircraft parts were in conformity with Department of Defense

7

Case 1:17-cr-00550-SOM   Document 96   Filed 07/04/19   Page 8 of 10   PageID #: 434

standards); *U.S. v. Prosperi*, 573 F.Supp.2d 436, 442 (D.Mass. 2008) (holding that the WSLA applied to an interstate highway construction project, and that "[i]n light of *Grainger*, it makes no difference that the fraud in this case involved a construction project unrelated to the Iraqi or Afghani conflicts"). As such, it is of no moment that an armistice was signed in 1953 terminating hostilities in the Korean War as noted by defendant. Dkt. 89 at 6-8.

Defendant asserts that the WSLA must be construed narrowly, and the Government agrees. *See*, *e.g.*, *Kellogg Brown & Root Servs., Inc. v. U.S., ex rel. Carter*, 135 S.Ct. 416 (2015) (quoting *Bridges*, 346 U.S. at 216, in affirming that the WSLA should be "narrowly construed" and "interpreted in favor of repose"). In analyzing the plain text of the WSLA, there is nothing in the statute that suggests that the offenses falling under the purview of the WSLA must be connected in any way to the war or use of military force that triggered the suspension of limitations, nor does the defendant cite to a single case that supports this position. Indeed, the Government has been unable to identify any judicial opinion that even suggests that the charged crimes must be somehow related to armed conflict.

As explained above, each of the charges in the indictment arise out of the same set of facts which establish a fraud perpetuated by the defendant against the U.S. government in the award of government contracts which resulted in a pecuniary gain to the defendant. Moreover, during the time the crimes were committed and

continuing to today, two congressionally-mandated Authorizations for the Use of Military Force have been and still are in effect. The defendant's crimes therefore fall within the purview of the WSLA. Accordingly, the statute of limitations is not a bar to the charges in this case.[1]

## CONCLUSION

For these reasons, the government respectfully requests that the Court deny defendant's motion to dismiss in its entirety with prejudice.

Respectfully submitted this 4th day of July, 2019.

    AnnaLou Tirol, Acting Chief
    Public Integrity Section


    */s/ Erica O'Brien Waymack*
    Richard B. Evans
    Peter M. Nothstein
    Erica O'Brien Waymack
    Trial Attorneys
    Public Integrity Section
    Criminal Division
    U.S. Department of Justice
    1400 New York Ave., NW
    Washington, D.C. 20530
    (202) 514-1412

---

[1] Defendant incorrectly claims that the "Forfeiture Notice" is also barred by the statute of limitations because it relates to "civil claims." Dkt. 89 at 10. Indeed, the forfeiture notice contained in the Indictment involves criminal forfeiture related to violations of criminal statutes. Thus, it is not subject to dismissal on statute of limitations grounds.

## Certificate of Service

I HEREBY CERTIFY that this 4th day of July, 2019, an electronic copy of the foregoing was served view the Court's ECF system on Louis Ching, Esq., counsel for defendant Duane Nishiie.

                                                 */s/ Erica O'Brien Waymack*
                                                 Richard B. Evans
                                                 Peter M. Nothstein
                                                 Erica O'Brien Waymack
                                                 Trial Attorneys
                                                 Public Integrity Section
                                                 Criminal Division
                                                 U.S. Department of Justice
                                                 1400 New York Ave., NW
                                                 Washington, D.C.  20530
                                                 (202) 514-1412