UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.  17-CR-00550SOM |
|  | ) |  |
| Plaintiff, | ) | February 25, 2019 |
|  | ) | 2:17 p.m. |
| vs. | ) |  |
|  | ) |  |
| DUANE NISHIIE, | ) |  |
|  | ) | U.S. District Court |
| Defendant. | ) | 300 Ala Moana Boulevard |
| _____ | ) | Honolulu, HI 96850 |


TRANSCRIPT OF MOTION FOR WITHDRAWAL AND SUBSTITUTION OF COUNSEL;
DEFENDANT'S MOTION TO PROHIBIT ANY FURTHER RULE 15 DEPOSITIONS
AND THE DEPOSITION OF SEUNG JU LEE; DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS; FINAL PRETRIAL CONFERENCE
BEFORE THE HONORABLE RICHARD L. PUGLISI
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For Plaintiff: | Peter M. Nothstein, Esq. |
| | Richard B. Evans, Esq. |
| | U.S. Department of Justice |
| | Public Integrity Section |
| | 1400 New York Avenue, NW |
| | Washington, D.C. 20005 |
| | |
| For Plaintiff: | Erica O'Brien Waymack, Esq. |
| | U.S. Department of Justice |
| | Criminal Division |
| | 1400 New York Avenue, NW |
| | Washington, D.C. 20005 |
| | |
| For Defendant: | Louis Michael Ching, Esq. |
| | 4475 Kilauea Avenue |
| | Honolulu, HI  96816 |
| | |
| For Defendant: | Myles S. Breiner, Esq. |
| | 1003 Bishop Street, Suite 2150 |
| | Honolulu, HI  96813 |

APPEARANCES:  (Continued)

Transcription Service:          Jessica B. Cahill, CER/CET-708
                                Maukele Transcribers, LLC
                                467 Maukele Place
                                Wailuku, Maui, HI  96793
                                Telephone: (808)244-0776

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1  FEBRUARY 25, 2019                                    2:17 P.M.

2          THE CLERK:  Criminal 17-00550, United States of America

3  v. Duane Nishiie.  This case is called for a final pretrial

4  conference, Defendant's motion to withdraw and substitution of

5  counsel and continuance of trial, and Defendant's motion to

6  compel production of Jencks materials, and Defendant's motion to

7  prohibit any further Rule 15 deposition and deposition of Seung

8  Ju Lee.

9          Appearances, please, counsel, for the record.

10          MR. NOTHSTEIN:  Good afternoon, Your Honor.  Peter

11  Nothstein on behalf of the Department of Justice.

12          MR. EVANS:  Richard Evans on behalf of the Department

13  of Justice.

14          MS. WAYMACK:  Erica O'Brien Waymack on behalf of the

15  Department of Justice.

16          THE COURT:  Good afternoon.

17          MR. CHING:  Good afternoon, Your Honor.  Louis Ching on

18  behalf of Mr. Duane Nishiie, present to my left.  To my furthest

19  left is new counsel Myles Breiner.

20          THE COURT:  Good afternoon.

21          MR. BREINER:  Good afternoon, Your Honor.

22          MR. CHING:  Judge, if we can proceed with the motions

23  that I filed and the last of the three -- and the last one would

24  be the motion to withdraw as counsel.  But I think I have been

25  given permission to argue the first two motions.

4

```
 1            THE COURT:  Okay.

 2            MR. CHING:  Which would the Government prefer to

 3   address first?

 4            MR. NOTHSTEIN:  Your Honor, I think we would be happy

 5   to address the motion on Rule 15 and motion to compel.  I think

 6   we have a bit of a question about this, Your Honor.  Mr. Ching

 7   has moved to withdraw, so I feel like it would be appropriate for

 8   the Court to decide that motion first before deciding the

 9   substantive motions, Your Honor.

10            THE COURT:  Okay.  Mr. Ching, did you want to tell us

11   about the motion to withdraw first.

12            MR. CHING:  Yes, Your Honor.  I stated in the motion,

13   Judge, that on Saturday -- today is Monday -- on Saturday, I

14   received information from Mr. Breiner's office that he would be

15   taking over the case, privately retained as opposed to court

16   appointed, as I am.

17            And so, I basically filed that motion Sunday morning to

18   apprise the Court and opposing counsels that private counsel is

19   going to step in.

20            THE COURT:  Okay.  And that's the sole basis then, is

21   that --

22            MR. CHING:  Yeah, it wasn't a basis of not getting

23   along with the client, or irretrievably broken relationship, or

24   anything of that nature.  It was simply on the basis that the

25   client wanted to have a private lawyer to, I guess, proceed with
```

1    his case, and he was able to retain Mr. Breiner, and that was

2    all.  But it wasn't a case of a problem with communication or any

3    of those other problems that you would normally engage in when

4    you substitute another CJA counsel.  Not like that.

5              THE COURT:  Oh, okay.  All right.

6              MR. CHING:  And I did make -- that motion also has --

7    is asking for a continuance for the benefit of new counsel.

8              THE COURT:  All right.

9              MR. NOTHSTEIN:  Your Honor, the Government's position,

10   given that Mr. Ching has just confirmed the basis for this motion

11   to withdraw is not based on a relationship that's irretrievably

12   broken, it's a voluntary change at the last minute, Your Honor.

13   As you know, we're here for the final pretrial conference.

14             The Government views this as a delay tactic, Your

15   Honor.  Mr. Ching has been on this case for 18 months at this

16   point and is well up to speed on the case.  We think this is

17   simply a situation where the Defendant realizes that trial is

18   coming and would like more time.  Because that's the basis for

19   the motion to withdraw, Your Honor, we oppose the motion to

20   withdraw and substitute counsel at this time, and we oppose a

21   continuance for those reasons as well, Your Honor.

22             Further, we would just note -- I think we had -- the

23   Government has concerns, or as Mr. Ching stated new counsel would

24   be retained counsel, but Mr. Ching has been operating for 18

25   months, paid by the Government as appointed counsel, after Mr.

1   Nishiie filed his financial disclosure saying that he couldn't

2   afford counsel.  I think it raises questions, certainly, Your

3   Honor, as to the nature of the new funds, when the new funds were

4   made available, and whether or not the Government's been paying

5   for a lawyer for Mr. Nishiie during a time which he could afford

6   it.

7           So that's the Government position on the motion to

8   withdraw and the motion for continuance.

9           MR. CHING:  May I be heard?

10          THE COURT:  Yes.

11          MR. CHING:  Yeah.  To follow-up, Judge, with the recent

12  things that have been going on with the prosecution in discovery

13  and so forth, it became clear to me that if they were to be

14  allowed to follow through with what they wanted to do, regardless

15  of if it was Mr. Breiner or myself at this point, I would have to

16  probably continue the trial.  And for the following reasons, Your

17  Honor, it has been going on for 18 months, and what happened was

18  we -- I've gotten already ten sets of discovery.  And you would

19  think that it's so late in the game with a few weeks off from

20  trial, that the Government would have provided the discovery

21  early on.

22          And example, Judge, I received set nine in February of

23  2019.  We're still in February today.  So just a few weeks -- a

24  couple weeks ago I received set nine.  And set nine had grand

25  jury testimony from Tennessee, which is Seong, S-E-O-N-G, Woo, W-

1  O-O, An, A-N, which is listed as witness number one and has a

2  whole transcript of her testimony.  This was done in November

3  21st, 2017.  Now, why would I be receiving discovery in February

4  2019, of this nature?  That's what I've been seeing.  I've been

5  seeing the Government withholding a lot of their discovery until

6  the last minute.

7          I mean when I first went into this case, they gave me

8  set one, and then later on, a few months later, set two.  And it

9  started going on, and on, and on.  We were never given all the

10 sets at one time.  And the last several months we have gone up

11 from set five all the way to set ten.  And, except for set ten,

12 which I think is the least amount, set one through nine are

13 substantial amounts of discovery.  Set three alone has about 1.5

14 million pages or documents.  It's so large, Judge.

15         So I tend to ask myself why the Government, giving me

16 things that have been basically transcribed, or spoken in

17 English, and recorded and done in 2017.  The case was initiated

18 sometime in September 2017, with the indictment.  But why am I

19 getting things in 2019?  So when I started seeing the discovery

20 coming in like that -- and I believe the last two discovery, nine

21 and ten, came in this month.  I believe one of them came in like

22 October or November of last year.

23         Normally, these discoveries do take -- and they're

24 coming in CDs, thumb drives, and hard drives.  So when I see this

25 type of thing going on at this late date, I'm concerned because I

1    realize that it's not a fair play if they're going to go ahead --

2    and it's not good practice if they're going to go ahead and start

3    giving us documents weeks within the trial.

4            The other area that I wanted to point out is Jencks

5    material, Judge.  And I know that's part of the motion, but I'll

6    address it when I address the motion.  They have never given us

7    the Jencks material and there was an equally similar trial in

8    Korea that ended in January.  Actually, it ended earlier, but

9    they're waiting for the verdict in January, and it came out.

10           Now their position is that we will not have to give any

11   of it because we're not cooperating with the Korean Government,

12   things of that nature.  That's their argument.  And so we don't

13   -- it's not in our possession.  But when you look at the witness

14   list, their witness list is full of Korean police, investigators,

15   things of that nature in there, interpreters, where are they

16   getting all that information they're listing as witnesses and

17   exhibits too.  Some of them had been translated from Korean

18   documents.

19           And let me just point out something that was dated by

20   the Federal Bureau of Investigation on October 10, 2014, and this

21   was from an investigator named Eddie Lee.  And he states:  Eddie

22   Lee, the FBI, and Kevin Park -- Special Agent Kevin Park, CID,

23   basically met with Mr. Pak Jinsun (phonetic) and Kim Chiu Chung

24   (phonetic) at the Central District Prosecutors Office.

25           So these are the prosecutors for the Korean side.  And

1   this is what they noted.  Prosecutor Park wished to conduct a

2   joint interview of Lee Jung Ju (phonetic).  The team expressed an

3   extreme interest in the case and look forward to collaborating

4   with the CID and the FBI.

5         So for them to tell us that they don't have all of the

6   Jencks material is so disingenuous in that regard.  They work

7   side-by-side with the KNP.  They're working side-by-side with the

8   Government.  And all they haven't done is they just haven't asked

9   for it, or they've asked for it, and they haven't disclosed it to

10  us, or they know where it is, they just leave it in their

11  possession, that's about it.  So that's another area.

12        The other area was this, Judge.  In this case, I

13  anticipated had they not put on this Rule 15 deposition

14  requirements, and these Jencks materials, and all of these late

15  discovery, I would have been ready for this trial.  In fact, what

16  I did in November and January, I filed a motion for earl witness

17  disclosure -- witness list and exhibit list.  They opposed when I

18  had talked to them about it.  I had to file a motion and this

19  Court -- Judge Mansfield was kind enough to go ahead and order

20  them to disclose the witness list.

21        January 15th, was supposed to be the witness list.

22  They objected to filing it on record.  They didn't want to file

23  it on the record.  I filed my on the record, they didn't want to,

24  because they said it was tentative, and they could change it.

25  They listed 48 witnesses.  Forty-eight, Judge.  It takes about

1    ten to 15 hours to prepare cross-examine for any one of them.

2    Most of them are substantial witnesses with grand jury testimony

3    and all types of -- there are five agencies investigating this

4    case.  One is the Korean National Police, one is the FBI, and

5    three are military related.

6            So you have lots of material for every one single

7    witness, because they're all conducting, supposedly, independent

8    and then consolidating all the paperwork with the FBI or with the

9    Prosecutors Office.  So once I got that, I knew I could be a

10   ready.  A week or so later, I got another 12 witnesses that they

11   said that they're going to add on.

12           And their position was we can change it anytime we

13   want.  That was their position.  We can change it because it's

14   only tentative -- the Court ordered only tentative.  It's always

15   based on good faith.  From a public integrity unit that doesn't

16   practice good faith, they know that it's supposed to be the real

17   witnesses.  So I grabbed all 60 witnesses, and I've been

18   preparing each and every one for cross-examination now.

19           Then on February 15th, they disclosed their witness

20   list.  My witness list had 20 -- sorry, exhibit list.  My exhibit

21   list had 20 something, theirs had 147 exhibit lists.  These are

22   not -- none of them of them are single paper.  A lot of them are

23   documents.  So 147.

24           So with 147 exhibit list, with 60 witnesses, I would be

25   prepared on March 27th to go forward.  And I think the Court

1    knows about me.  When I say I'm going to be ready, I'm going to

2    be ready, and I am ready.  The problem is they start adding more

3    things.

4              Now, they want the main witness in the case -- the main

5    witness against my client, they want to do it by deposition, in

6    Korea, and at the last moment.  They're misusing the Rule 15

7    purpose.  The Rule 15 purpose is to basically preserve testimony.

8    It's not to go ahead and allow to avoid a trial -- a criminal

9    trial.  If -- we're so close to the trial.  They should just

10   bring the person to the trial, in Hawaii, and have them take the

11   stand and testify, not a week or two before trial starts.

12             And that witness is the most important witness.  The

13   two witnesses that we took in October.  You see, they got the

14   deposition order -- the stipulation to do it in January 3rd, I

15   believe, of 2018.  I thought they were going to do it the next

16   month.  They don't even start -- get it ready until October.  And

17   I thought that was pretty close and really close to the trial

18   date, which is March.

19             It turned out now they're even making it worse.  But

20   when we took it in October, each witness, which wasn't really a

21   big deal witness or substantial witness, it took four hours for

22   one witness and five hours of deposition for the other witness.

23   The main witness in this case, which is the former co-defendant,

24   I believe is going to take ten plus hours to do the deposition.

25   I can't imagine preparing for that witness and preparing for that

1    deposition with all the 60 witnesses I have and the 147 exhibits

2    I have and doing this right before the trial of March 27th.  That

3    kind of stuff should be done during the trial, when we can get

4    ready for all the witnesses at one time.

5            So with this kind of practice, Judge, I just find it --

6    I'm asking also the Court to void and vacate the stipulation

7    order because, Judge, this is the reason.  Had someone told me

8    back in November, December of 2017, that if I sign this

9    stipulation that we weren't going to take it until a few weeks

10   before -- we weren't going to take the Rule 15 depositions until

11   about three weeks before trial, four weeks before trial, I would

12   say, no, that's crazy.  And I told them that's crazy.  I mean --

13   but they didn't put that in there.  And now they're saying that,

14   tough luck, I have to live with it because I signed it.

15           When you have people being dishonest like that, this

16   Court's remedy is basically to shut them down and say, you can't

17   do that.  Had they taken this in June of 2018, I wouldn't have

18   been sitting here grumbling about it.  Had they taken it even --

19   I waited all the way to October, because it actually was supposed

20   to be done some time in August.  That's when I was supposed to --

21   I cleared my docket for July and August because that's what they

22   initially wanted.  And I said, perfect.  Six months ago was the

23   order.  We have still another eight months for trial.  July and

24   August was great.  They then decide not to take depositions.

25           Then I get a call one day in, I don't know what part of

1  October telling -- or in September telling me we're going to take

2  it in October.  Well, I'm ready.  I get prepared for it, and I do

3  it, but this thing about telling us we're going to do it now when

4  we're just a few weeks off from trial, that's utterly ridiculous

5  to go ahead and imagine that we would then have agreed to that in

6  a stipulation that occurred like 15 months ago.  That's utterly

7  bad practice and shouldn't be allowed in this Court.

8          So in the regard, Judge, had it been Mr. Breiner or

9  myself, I would have gone ahead and had to have a continuance if

10 the Court was going to allow them to do this Rule 15 deposition.

11 My attitude is -- and then they cite these laws, Judge, that says

12 we can do it.  They only cite one Ninth Circuit law and that law

13 doesn't stand for that.  That law has -- that law basically says

14 you still have a physical confrontation.

15         In the Ninth Circuit case that they cited, Judge, they

16 missed -- they didn't let the Court know -- and that's in United

17 States v. Mejick (phonetic), they didn't let the Court know that

18 that client was never brought to [indiscernible].  In the

19 deposition, you have a physical face-to-face confrontation.  In

20 October, they actually brought the witnesses to Hawaii, and so my

21 client had the face-to-face confrontation.

22         But now what they want to do with this Rule 15, is they

23 want to have this person remain in Korea, and my client is here.

24 Why can't my client go to Korea, because they objected that my

25 client is not allowed to go to Korea.  They didn't want him

1  running around in Korea.  So that's why he had to be in Hawaii.

2         But that's why they've got to bring he witness to

3  Hawaii.  And in Mejick what happened in that case, Judge, the

4  reason they -- that's a Canadian case, when they did the

5  depositions in Canada.  The reason why they couldn't bring the

6  Defendant to Canada was because he had other crimes of drug

7  dealing.  And so they're afraid the Canadian Government might

8  arrest him, and hold him there, and prosecute him there.

9         And so they didn't bring him.  So they did try.  This

10 group has never tried, and they still want -- and they don't

11 believe in the constitutional right of face-to-face.  And the

12 Ninth Circuit had to bend over backwards.  They said, well, at

13 least you tried in the Mejick case.  This group has never tried

14 at all.

15        So Rule 15 depositions should not be allowed anymore at

16 this point.  And that's our position.  But anyway, Judge, that's

17 why I'm saying, they're saying that they're objecting to a

18 continuance, they have to play fair and honest with us in that

19 regard.  Their attitude was, we are now complaining because we

20 signed something a long time ago.  Well, that's not really true,

21 Judge.  When we signed it a long time ago, over 15 months ago, we

22 had anticipated that they would do it back then, not put us under

23 all this pressure a few weeks before trial, because we have

24 enough to get ready for trial.

25        If you say to them, we won't let you do the Rule 15

1   deposition, things of that nature, I can -- I'm ready for trial

2   March 27th, because I have done the -- I can do the 60 witnesses

3   and the 147 exhibits.  But they don't want it like that.  And

4   they have to give us Jencks material, and they don't want to give

5   Jencks material.

6          And so that's the situation.  And I think,

7   unfortunately, when I asked them at deposition -- and I objected

8   at two depositions to not getting Jencks material, because both

9   of these witnesses, at least one, but for sure -- for sure one,

10  but I think both of them testified in the Korean trial.  And I

11  said if you're going to call these witnesses, it's not my duty,

12  you're going calling the witnesses.  If you're going to call

13  them, you have to provide Jencks material.  Their attitude was

14  no.  That's why I had to file the motion again.  I've talked to

15  them about every single issue, they've always said, no, and so I

16  have to file it with the Court.

17         To be a fair trial, we need the Jencks material, we

18  need them to stop this rule -- last minute Rule 15 depositions,

19  we need to have them bring the witnesses to trial, so he can have

20  a face-to-face confrontation, and then we're ready for trial.

21  And I would be ready.  So, anyway, Judge, that's it's then,

22  Judge.

23         THE COURT:  Well, Mr. Ching, as you're speaking about

24  this, it strikes me that your motion to withdraw is something

25  that I need to take a look at first, because your client does not

1    have a right to two lawyers unless, of course, he's paying two

2    lawyers he can have as many as --

3              MR. CHING:  He's paying one, so.

4              THE COURT:  He can have as many lawyers as he's willing

5    to pay for, but he does not have a right to a CJA counsel and a

6    retained lawyer.

7              MR. CHING:  Right.  He's retained him already though,

8    Judge.

9              THE COURT:  That's pretty clear.  So what's the United

10   States' position, again, on the motion to withdraw because if the

11   motion to withdraw is granted, this trial is going to have to get

12   continued --

13             MR. NOTHSTEIN:  Yes, Your Honor.

14             THE COURT:  -- obviously.

15             MR. NOTHSTEIN:  I'm sorry, I didn't mean to interrupt,

16   Your Honor.

17             THE COURT:  No, go ahead.

18             MR. NOTHSTEIN:  Your Honor, we agree.  I mean if the

19   Court does see clear to allow Mr. Ching to withdraw and allow Mr.

20   Nishiie to substitute counsel, then clearly counsel is going to

21   need time to get up to speed.

22             Our position is that the motion to withdraw, which Mr.

23   Ching confirmed is not based on irrevocable damage of the

24   attorney-client relationship.  And so it's just a voluntary

25   change of counsel, which we view to be a delay tactic.  So our

1    official position is we are against the motion to withdraw.

2              I would note, Your Honor, that -- well, first things

3    first.  I just want say for the record, there are several things

4    said before by Mr. Ching that we have done, that we have said,

5    that we believe, which the Government disputes.  I will not go

6    into all those things.  I simply can address those as we address

7    each motion, if we get there, but the motion is not predicated --

8    the motion to continue, that is, is not predicated on the Rule 15

9    depositions, the Jencks motion, or the discovery, which I will

10   say that the recently provided discovery, Your Honor, was far

11   more limited, I believe, than Mr. Ching is representing, but

12   that's the not the basis for the motion.

13             So solely on the voluntary motion to substitute

14   counsel, the Government officially opposes.

15             THE COURT:  Okay.  You know what, Mr. Ching, I would

16   like to ask you some questions --

17             MR. CHING:  Yes.

18             THE COURT:  -- relating to that motion, and I would

19   like to clear the courtroom in order to do that.

20             MR. CHING:  Yes, Your Honor.

21             THE COURT:  Okay.  And, Mr. Breiner, since you're not

22   officially on board yet, I think I have to clear you out as well.

23        (Sealed hearing between the Court, the Defendant, and

24   Defendant's counsel began at 2:37 p.m., ending at 2:57 p.m., not

25   transcribed.)

1          (The Government Attorneys and Mr. Breiner reenter the

2     courtroom at 2:57 p.m.)

3          (In open court.)

4          THE COURT:  All right.  Thank you all.  I will grant

5     Mr. Nishiie's motion for withdrawal and substitution of counsel.

6     And, Mr. Ching, if you could prepare that order.

7          MR. CHING:  Do the Prosecutors waive signature or?

8          MR. NOTHSTEIN:  I'm sorry.

9          MR. CHING:  Do you waive signature on that order or?

10         MR. NOTHSTEIN:  We would be happy to sign it

11    electronically if that's --

12         MR. CHING:  Okay.  Thank you.

13         THE COURT:  Have counsel, at all, talked about a

14    suitable resetting date?

15         MR. NOTHSTEIN:  We talked briefly outside, Your Honor.

16    I think the position -- Mr. Breiner's position was towards the

17    end of the year, I think, was the suggestion.  I don't want to

18    speak for you, of course.

19         MR. BREINER:  Frankly, Your Honor, it's difficult for

20    me estimate how much time it would take to -- or I would need to

21    take to get up to running speed.  Given that Mr. Ching has been

22    on the case for 18 months, and the voluminous nature of the

23    discovery -- and I know they're going to object to this, they

24    were ready for trial in March, but I'm looking, probably, into

25    2020.

```
 1              THE COURT:  Okay.

 2              MR. BREINER:  I mean, I want to avoid -- I mean, should

 3    we go to trial, I think it would behoove the Government to avoid

 4    a 2255, if I'm forced to, you know, go to trial before I'm

 5    prepared.  It doesn't make sense to me to guarantee an appeal,

 6    and that's if we go to trial.  But I'm not in a position now to

 7    make any comments about the nature of our defense, or motions

 8    that we're going to file.  If we're going to, again, proceed with

 9    the filing that Mr. Ching has already submitted on.  It's a bit

10    premature.

11              THE COURT:  When are you available next year, Mr.

12    Breiner?

13              MR. BREINER:  It would have to be sometime either in

14    February or March of next year.

15              THE COURT:  Okay.

16              MR. NOTHSTEIN:  And, Your Honor, obviously Mr. Breiner

17    needs time to prepare.  Certainly, we do want to assure he is

18    prepared for trial as we believe it certainly will likely go to

19    trial.  Twelve to 13 months from today or a year from the trial

20    date seems lengthy to the Government, Your Honor, frankly,

21    especially given the fact the Government has preliminarily

22    identified witnesses and exhibits.  We would request something

23    earlier than that, Your Honor, but we understand that trial

24    schedules can be difficult.

25              We would request that whatever date is set though, is a
```

1   realistic date and that the parties anticipate that if the case

2   is going to trial, which we think it will, that this date is

3   somewhat a firm date then, Your Honor.

4          MR. BREINER:  Well, I don't disagree with that.  So

5   that's why I suggested a year out from now, into February of next

6   year, in all fairness.  I mean, we have three very able attorneys

7   from the Government that have been on this case certainly -- or

8   two of the three, at least, have been on this case since, what,

9   2015, Mr. Ching?  That puts me quite a bit behind the eight ball.

10          I need to get up to running speed, minimally, by this

11  -- the time it takes to go through the discovery as outlined by

12  Mr. Ching.  And the Government's, obviously, not disagreeing that

13  there is voluminous discovery, it's technical discovery.  They

14  still want to do additional depositions, and I have a position on

15  that.  I obviously can say nothing until I was counsel.

16          I oppose depositions.  Especially depositions that are

17  taken outside the presence of a jury.  I prefer the right to

18  confrontation, which is the Sixth Amendment right.  And if

19  someone is going to be saying something about my client that's

20  going to result in his being incarcerated if he's found guilty, I

21  want to cross-examine them in front of the jury, albeit with an

22  interpreter or otherwise.  That's my position.  It's always been

23  my position.  I have always steadfastly resisted doing

24  depositions in lieu of live testimony.  It kind of makes a

25  mockery of our system if we're going to convict a man based upon

1  testimony in a foreign country where the jury doesn't get to

2  weigh the responses and that person's reaction to cross-

3  examination.

4          THE COURT:  Well, after review of the pleadings

5  relating to the Rule 15 request and having been involved in a

6  number of proceedings myself in Korea, I do note that there is no

7  present scheduled deposition anywhere.  So I'm not even sure if

8  this is a ripe issue for us at this point.

9          MR. NOTHSTEIN:  Your Honor --

10          MR. BREINER:  And that further demonstrates my lack of

11  knowledge about this case.  Literally, between Saturday and

12  today, Mr. Ching's made a concerted effort to get me up to speed,

13  at least as far as today's motions are concerned.  I've met with

14  my client twice.  Clearly, I have a long way to go to be up to

15  speed for this trial.

16          Looking at what's been filed in this case so far, since

17  nothing's been scheduled I'm not going to oppose it at this

18  point, other than I've made by record that I will be opposing it

19  should they proceed to attempt depositions in a foreign country.

20          THE COURT:  All right.

21          MR. NOTHSTEIN:  And, Your Honor, if I may clarify on

22  the depositions.  That is correct.  The deposition of Seung Ju

23  Lee, the co-defendant who is really the subject of the motion,

24  that deposition has not been scheduled.  However, I think what we

25  would ask is that the Court and Mr. Breiner, within a short

1    amount of time, state his position on -- if he wants to adopt the

2    Rule 15 and the motion to compel because the deposition of one of

3    the individuals that was authorized by the Court's order last

4    January, that looks like that may be scheduled sometime soon or

5    the opportunity is there for that to be scheduled sometime soon.

6            I certainly understand Mr. Breiner needs some time to

7    get up to speed so he can properly cross-examine the Defendant if

8    that's to go forward, but I think that that motion is ripe with

9    regard to at least one deposition that looks like it may be abled

10   to be scheduled in the near future.

11           THE COURT:  Well, as I'm hearing Mr. Breiner, and I --

12   this discussion started in relation to us discussing a trial

13   setting, but as I'm hearing him he opposes all depositions.

14           MR. BREINER:  That's correct.  I'm emphatic in that

15   regard, and I think the Constitution supports that especially

16   when we're talking about someone who the Government in Korea, as

17   I understand it, refuses to allow that person to come here.

18   That's a serious problem, and one that I'm sure the Supreme Court

19   would like to weigh in on, should there be an appeal in this

20   matter.

21           THE COURT:  Well, here's how I feel about it.  Until

22   the deposition is set, because it is extremely complicated to set

23   up a legal proceeding in Korea --

24           MR. NOTHSTEIN:  Yes, it is.

25           THE COURT:  -- until it's set, I don't think there's an

 1   issue.

 2         MR. BREINER:  I agree.

 3         THE COURT:  There's no present deposition that is now

 4   scheduled.  And so, I don't think there's anything before the

 5   Court.  I mean, you folks have indicated that you would certainly

 6   like to take a deposition.  You know, I would like to do a lot of

 7   things too, but it doesn't mean that, you know, the issue is ripe

 8   for someone to decide whether I get to do what it is that I would

 9   like to do.

10         So I'm going to deny the motion as premature.  And, Mr.

11   Breiner, if it comes to a point where you get a deposition

12   notice, then I think you probably know what to do at that point.

13         MR. BREINER:  I do.  Thank you.

14         THE COURT:  But can I get back to this trial thing.

15         MR. BREINER:  Well, my suggestion is a year from now.

16   I know the Government doesn't like that, but the fact is no harm,

17   no foul.  I mean they say their case is all together, and they

18   have their witness list done.  And the fact they disclosed their

19   witness is really irrelevant to me, because half the time they

20   dump, as I said 48 witnesses, and then ultimately if we go to

21   trial, it's going to be pared down to essential witnesses.  And

22   certainly the Court's going to want an offer of proof from the

23   Government as to the essential nature of each of these 48

24   individuals.

25         So I'm the person that needs to get prepared for my

1  client.  Unless the Government -- you know, I keep insisting it

2  doesn't make good sense to argue over time when potentially

3  they're exposing themselves to a 2255 ineffective assistance.

4  And I try not to practice that way.  I want to be prepared.  I'm

5  assuming the Government would like to see me prepared and fully

6  up to speed.

7          MR. NOTHSTEIN:  We certainly would, Your Honor, and the

8  Court -- certainly, we need to give Mr. Breiner time.  Could we

9  suggest, perhaps, early February, a bit more than the full year

10  out?

11          THE COURT:  Yeah, you're going to be subject to your

12  trial judge's schedule here anyway, so I don't have a huge

13  heartburn setting in February.  I don't particularly like it, but

14  Mr. Nishiie has a constitutional right to a counsel of his

15  choosing.  I have questioned him in that respect.  This is the

16  counsel of his choosing, and he has a right to have the counsel

17  have adequate amount of time to become prepared and to review the

18  case, as well.  So let's set this matter for February.

19          THE CLERK:  Trial set February 11th, 2020, before Judge

20  Mollway, 9:00 a.m.  Final pretrial conference January 13th, 2020.

21  Motions due December 30, 2019.  And a response date of January

22  13, 2020.

23          THE COURT:  And I do make the finding that this

24  continuance is necessary and outweighs the interest of the public

25  and the Defendant in a speedy trial.  So the time period from --

1    is it March 27th -- to the February 11th, 2020, new trial setting

2    is excluded for speedy trial purposes.

3            MR. BREINER:  Thank you, Your Honor.

4            THE COURT:  All right.  So the motion relating to the

5    Rule 15 depositions is denied as not ripe.  The issues are not

6    ripe for decision.

7            Are there any other issues that we can deal with?

8            MR. NOTHSTEIN:  I think just on a technical matter,

9    Your Honor, there's a second pending motion, which is the motion

10   to compel that Mr. Ching characterized as Jencks material.  If

11   the Court would ask Mr. Breiner, if he wants to adopt that motion

12   within a reasonable period of time, or we can just -- otherwise,

13   it is ripe for decision.

14           THE COURT:  I mean the Jencks material is uniquely

15   trial related material, so --

16           MR. BREINER:  My preference is to adopt whatever Mr.

17   Ching has filed, because he's up to speed on this matter, and I

18   trust Mr. Ching.  We've known each other over three decades, and

19   I'm familiar with his practice.

20           MR. NOTHSTEIN:  We're prepared to argue it further as

21   regard to the depositions, if the Court would like to do that

22   now.

23           THE COURT:  No, I don't want to talk about depositions

24   anymore, but as far as the Jencks material is concerned.

25           MR. NOTHSTEIN:  Do you want me to get into the

1    substance, Your Honor?

2            THE COURT:  Sure.

3            MR. NOTHSTEIN:  Well, as we late out in our papers,

4    Your Honor, Mr. Ching is not accurate in his representation that

5    we have undertaken this prosecution with the Korean Government.

6    The Korean Government -- at times, the agents of the U.S.

7    Government who are in Korea have obtained documents from the

8    Korean National Police, even the few times they have sat in and

9    done interviews together.

10           We have obtained some document, you know, of -- you

11   know, documents of those interviews and things like that.

12   Everything that we have from the Koran Government, we have given

13   to the Defense.  There is nothing that we are, as Mr. Ching says,

14   withholding with regard to that, Your Honor.

15           The question here -- and Mr. Ching raises it with

16   regards to the depositions of Michael Jung and the Sung Jung Kim,

17   the two Rule 15 deponents from our -- late last year.  Both of

18   them, apparently, testified in the Korean proceeding.  Mr. Ching

19   asked us for copies of those trial transcripts.  We don't have

20   them.  Your Honor, this is not a prosecution that we undertook

21   along with the Koreans.  We have not worked with the Koreans on

22   that prosecution whatsoever.

23           In fact, we didn't know that they had testified in that

24   proceeding until they came here to the deposition in Hawaii and

25   told us.  And in fact, the Korean prosecution has significantly

1    interfered with the Government's prosecution here, because it's

2    made not only Seung Ju Lee unavailable to come to the United

3    States, but it's affected other witnesses as well, Your Honor,

4    who have not -- either chosen not to travel the United States and

5    are outside of our subpoena power or cannot travel because of

6    their legal proceedings.

7             THE COURT:  Well, you can probably see, Mr. Ching's

8    position though. It's kind of hard to believe that there wouldn't

9    be a coordination between the two governments that are very close

10   allies, right.  But what you're saying is there has been no

11   coordination, you are not in possession of any of these

12   materials.

13            MR. NOTHSTEIN:  That is correct.

14            THE COURT:  You, yourself have never been in possession

15   of these materials, so can how you produce something that you

16   don't have.

17            MR. NOTHSTEIN:  That is correct, Your Honor.  And I

18   will just say that there is a large difference between military

19   and diplomatic alliances and coordination between two governments

20   and two separate systems of law and judicial -- or and judicial

21   functions, Your Honor.  You are correct, we do not have them.  We

22   have never had them.  Obtaining --

23            THE COURT:  It's just -- it is unusual in the context

24   because this involves the -- a huge military construction project

25   in Seoul, Korea, and you would think that there would be total

1    coordination to prosecute those in Korea as well as outside of

2    Korea, and maybe there might even be some treaty or bilateral

3    agreement that would make cooperation mandatory even.

4            MR. NOTHSTEIN:  I would have hoped that there was

5    something like that, Your Honor.  In fact, even though there is a

6    significant military collaboration between the two governments,

7    there is not the sort of seamless, I would say, sharing of

8    information and resources even with regard to prosecuting

9    essentially similar or the same conduct.

10           The Mutual Legal Assistance Treaties, which we can use

11   obtain documents at times and other cooperation from the Korean

12   Government, it is not a swift or smooth process.  It took us over

13   a year to simply have the Korean Government help us obtain bank

14   records and certifications of bank records.  We have had to file

15   these MLAT requests for the Rule 15 depositions.  And I think

16   Your Honor noted you've had to engage in some legal proceedings

17   in Korea.  I'm sure you may have encountered similar obstacles.

18           I agree that we would hope and want things to work a

19   little more smoothly, but they certainly do not.  And in any

20   regard, even if it was easier to obtain things from the Korean

21   Government, the simple fact here is we did not -- this is not a

22   joint prosecution.  This is not a joint investigation.  Not a

23   joint undertaking.

24           The things that Mr. Ching asked for are in the sole

25   possession of the Seoul Prosecutor's Office. We don't have them.

```
 1    We would give them to him if we had them.  We just don't have

 2    them.

 3            MR. CHING:  Your Honor, if I may respond?

 4            THE COURT:  Yeah.

 5            MR. CHING:  There are so many documents from the Korean

 6    National Police.  All these bank records.  They have tons --

 7    their case is based on bank records and the KNP are producing it

 8    for them, giving them everything.  I believe that they just

 9    haven't asked for those other areas, because they're actually

10    prosecuting the same case that is being prosecuted here was

11    prosecuted in Korea.

12            I think they have a duty to ask because they're the

13    ones calling those witnesses.  And those testimonies are very,

14    very relevant.  It's the same testimonies that's going to be said

15    in the United States Court.

16            And right now, I believe politically, the Korean

17    Government wants to be friends of the military for two reasons.

18    One, the military provides them with a lot of money, a lot of

19    security.  And, number two, you know, Trump is basically asking

20    them -- the Korean Government to pay more for our military

21    presence there and the Korean Government is asking not to pay as

22    much.

23            So they're trying to be very nice to America and to

24    meet all of their concerns.  I bet if these prosecutors just

25    asked the Korean Government or KNP, please get the -- get your
```

1    notes from the witnesses that we intend to call in America, they

2    would be delivered to these prosecutors.  I have no doubt about

3    that because they delivered thousands and thousands of other

4    documents.  They just need to ask.

5              And what they're saying is we don't ask -- we don't

6    have to ask or, because it's not in our possession, we don't have

7    to give it to you.  I think that that is not the way to practice

8    and in fairness in this case because they are cooperating.  I

9    believe these prosecutors just do not want to ask.

10             THE COURT:  Well, I -- well, I'll ask them in a second

11   because I'm curious if they've asked, but why would they have to

12   ask?

13             MR. CHING:  Well --

14             THE COURT:  Why would they legally be required to ask?

15             MR. CHING:  Well, because they know of testimonies that

16   are out there that they're going to get the same testimony

17   through the depositions or through trial right in our courtroom.

18   And that's what the Defense wants.  The Defense wants to see if

19   there's any prior inconsistent statements.  That's the whole

20   idea.  We want to see whether or not they're consistently

21   testifying and prepare for that, or they're inconsistent in their

22   testimony that would lead to either credibility or discredibility

23   in front of a jury.  That's the whole idea for the Defense.  The

24   Defense needs that.

25             The prosecution though, I think it's a little bit -- I

1  would be surprised -- I would like to hear their answer too,

2  whether they did try to ask for it.  So I'll leave it at that.

3            THE COURT:  All right.  Have you tried to get all the

4  Korean transcripts?

5            MR. NOTHSTEIN:  I will say admittedly, Your Honor, we

6  have not, and I would like to explain why.

7            THE COURT:  Okay.

8            MR. NOTHSTEIN:  The issue of the prior testimony did

9  not arise until the day of the depositions here in Hawaii, or I

10 think maybe the day before, one of the witnesses told us that he

11 had testified in a trial.  We informed Mr. Ching by email

12 immediately, so he was aware of that fact and was able to ask

13 questions the next day at the deposition.

14            Obtaining evidence from the Korean Government is not as

15 simple as simply asking.  We have to go through the Mutual Legal

16 Assistance process, which as I've said, Your Honor, takes a year

17 or more.  We have significant -- not a number of statements from

18 the witnesses who have testified, the ones who testified in two

19 depositions.  There's grand jury testimony, interviews to FBI and

20 Army CID Agents.  So there are a significant number of

21 statements.

22            I will just tell you, on the record, we asked both

23 witnesses did you testify the same way in the trial as you did

24 here.  They both indicated they did.  I understand that what Mr.

25 Ching would like to do here is to mime the testimony for

 1   potential prior inconsistent statements, but the bottom line

 2   here, Your Honor, is that under the Jencks Act, and our discovery

 3   obligations, those are not in the possession of the U.S.

 4   Government.  We are not in a joint venture with the Korean

 5   Government.  And Mr. Ching's points about the diplomatic

 6   relations between the two countries, that's for the State

 7   Department, Your Honor, that is not -- and the military, that is

 8   not the Department of Justice.

 9          Our interface with the Korean Government is the Mutual

10   Legal Assistance Treaties.  We have at times gotten evidence

11   through there, but it is a very long process, which is, frankly,

12   why we have not pursued it thinking we were going to trial in

13   March.

14          MR. CHING:  May I respond briefly, to give you an

15   example?

16          THE COURT:  Well, you know, I --

17          MR. CHING:  Just an example.

18          THE COURT:  Okay.

19          MR. CHING:  Yeah.  Mr. Michael Jung, he was the first

20   one to be deposed by the Government, this is what happened to

21   him.  He testified at the hearing that everything was the

22   responsibility of Colonel Lee.  He testified to that at the

23   deposition.  That Colonel Lee was the one that met with this

24   group.  Colonel Lee was the one that gave them a debit card.

25   Colonel Lee was the one that called the group together.  Colonel

1    Lee, Colonel Lee, Colonel Lee.  That's their main witness.

2    Because Mr. Jung was in America testifying and as long as they're

3    away from Korea, they're willing to blame it on whoever is in

4    Korea.

5              On cross-examination or examination during the depo, I

6    asked him what about this document.  I had a document.  I don't

7    know if the Government had it, but it was with -- it was so many

8    documents.  I had one.  And the document said that when he was in

9    Korea, he was interviewed by the -- I believe the FBI or one of

10   the military investigators.  And he blamed everything, while he

11   was in Korea, against Mr. Nishiie, who was in America.

12             So as long as you're not there, all these witnesses,

13   you see, they're all trying to avoid money laundering by the KNP.

14   So they're willing to testify in order for them not to be

15   prosecuted.

16             So in the deposition, I said, isn't it true you said,

17   this, this, this, this about -- that it was all Mr. Nishiie's

18   fault, whereas when you're in America you're saying it's all Mr.

19   Lee's fault.  And he basically said, I don't know, I don't know,

20   yeah, maybe so, but I had the document right there.

21             I'm expecting that when these guys are testifying in

22   Korea, they're blaming everything on Mr. Nishiie.  But if they

23   have to come to Hawaii to testify, they're going to blame

24   everything on Mr. Lee.  That's what -- an anecdotal thing that

25   happened at Mr. Jung's deposition.  I couldn't believe it.  And I

1   realize it's just people not wanting to get to -- not wanting to

2   make enemies with the person sitting across of them, just trying

3   to get by.  Because Mr. Jung was actually a suspect in the case.

4   He was eventually not prosecuted when he decided to cooperate

5   with the KNP.

6          So he was not prosecuted by the U.S. Government even

7   though he was one of those that took money from this

8   organization.  I think about $20,000 he took.

9          So, when you look at that, that's what I was thinking

10  about because all the witnesses, I can imagine, when they're in

11  Korea and Mr. Nishiie is in Hawaii, they're going to blame Mr.

12  Nishiie because they don't have to blame each other.  They don't

13  have to blame their friend like Colonel Lee who is right there.

14  Well, when they're in America, in Hawaii testifying, they're

15  going to blame anybody who is Korea.

16         And that's what I saw with Mr. Jung.  He did exactly

17  that.  Every word -- every time that there was a sentence he made

18  that in the prior statement it was Mr. Nishiie when he gave it in

19  Korea, and every statement he made in the deposition, same

20  statement, but at the end he put Mr. Lee's name in there.  It was

21  an amazing thing to watch.

22         That's what I was worried about.  That's why I don't

23  want a deposition there.  I want these people to come to trial

24  here.  That's why I want them to get the prior statements because

25  they all testified in Korea.  And I want to see what they do.

1   And I don't want them to testify in depositions in Korea, I want

2   them to come to Hawaii because they're going to start -- when

3   they come in face-to-face with you, they don't want to blame on

4   you anymore.  That's the position.

5          THE COURT:  Okay.  And I understand your position, Mr.

6   Ching, and it underscores the need for governments to cooperate

7   at all levels because I suppose if there are two independent

8   court systems who don't communicate with one another, and two

9   independent prosecutors who do not communicate -- these folks

10  don't even know what happened over there.

11         It sort of sets it up for people to take multiple

12  positions and not be accountable to multiple positions in a case.

13  So there's not much I can do about that.  I mean --

14         MR. CHING:  Can you order the Government to release and

15  make the request because even though it may take a year, now they

16  may have a year to go to ahead and get it ready.  I mean that's

17  the least they should be required to do is ask.

18         THE COURT:  Yeah.

19         MR. CHING:  Make a written request for it.  I bet

20  they'll get it.  I bet a year from now, we'll find out they got

21  all of it.

22         THE COURT:  You know what -- well, I'm not going to

23  guess and speculate --

24         MR. CHING:  Yeah, sorry.

25         THE COURT:  -- whether or not they'll get it or not,

1   but I would greatly question whether they get it actually, but --

2           MR. NOTHSTEIN:  And, Your Honor, I just want to point

3   out.

4           THE COURT:  Yeah.

5           MR. NOTHSTEIN:  So as I've discussed the MLAT process

6   where the Government can obtain documents, the Defense can use

7   the Court's power to letters rogatory to make an official request

8   as well.

9           THE COURT:  Yeah.

10          MR. CHING:  Yeah.  But we're not the one calling the

11  witness, see.  That's why it's their obligation for the Jencks

12  material because they're the ones calling it.  If they didn't

13  call that witness, the Defense would never have to even ask for

14  it.

15          THE COURT:  Understood, Mr. Ching.  It's just that the

16  Government has definitely laid enough foundation here for me to

17  conclude that they're not in possession or control of any such

18  statements that they would be required to produce under the

19  Jencks act.  And so I'm not going to require that they do that.

20  If they want to request them on their own, and they eventually

21  get them, then I think they would have an obligation give them to

22  you, but I don't think that there's any law that would justify me

23  ordering them to go to Korea, go to the Department of -- I think

24  it's Ministry or --

25          MR. NOTHSTEIN:  Ministry of Justice, Your Honor.

1          THE COURT:  Ministry of Justice and secure all of these

2   transcripts.  I just -- I mean that's a huge leap.

3          MR. CHING:  Judge, I doubt -- very much doubt it that

4   they went through that entire process to get these last couple of

5   witnesses for the Rule 15 deposition.  There's on individual, I

6   think his name is Jung or something like that, I doubt that they

7   went through that.  I think they simply can ask them, and I think

8   they're going to give it to them.  I just think they -- I think

9   they're so close tied to the hip with these == with this Korean

10  Group.

11         And you saw the letter that I wrote -- the memo that I

12  read to you, Judge.  It shows how the prosecution -- the head

13  prosecutor in Seoul wants to go ahead and look forward to

14  collaborating with the CID and the FBI.  I mean that's their own

15  memo from the FBI.  I mean, I think they can make a phone call

16  and say can you give it to us, and I think it will be there, but

17  I understand the Court's ruling, Judge.

18         THE COURT:  Well, it's fun to speculate, Mr. Ching.  I

19  definitely agree with you there.

20         MR. CHING:  But if you don't ask, you never get it.

21  That's my point.

22         THE COURT:  Yeah, that's right.

23         MR. CHING:  Yeah.

24         THE COURT:  That's right.  All right.  So I'm going to

25  deny Mr. Nishiie's motion to compel production of Jencks Act

1    materials --

2              MR. CHING:  Okay.

3              THE COURT:  -- at this time.  All right.  Now, I think

4    that squares away all the pending motions.

5              MR. NOTHSTEIN:  Yes, Your Honor.

6              THE COURT:  We've given you a new trial setting under

7    the circumstances of me granting the motion to substitute counsel

8    for Mr. Nishiie.  So I don't think there's anything further,

9    but --

10             MR. NOTHSTEIN:  Not from the Government, Your Honor.

11             THE COURT:  Okay.  Mr. Ching.

12             MR. CHING:  Judge, and if they're going to get

13   signatures, can they get it from Mr. Breiner, I believe he would

14   be the new counsel.  So they can get the electronic signatures

15   for any of the orders.  I'll do my order though.

16             THE COURT:  All right.  So are you going to send it

17   over to Mr. Breiner?

18             MR. CHING:  No, the order for withdrawal.

19             THE COURT:  Oh, okay.

20             MR. CHING:  That one I'll send him a copy, I guess, but

21   then I'll send you the original.

22             THE COURT:  All right.

23             MR. CHING:  And then we'll see if they sign it.

24             MR. NOTHSTEIN:  We have to take a look at it.  I'm sure

25   we'll consent to our --

 1              MR. CHING:  Yeah, it will just be an ordinary one.

 2              MR. NOTHSTEIN:  Yes.

 3              MR. CHING:  There's nothing or anything special.

 4              THE COURT:  Yeah, don't do anything fancy, Mr. Ching.

 5              MR. CHING:  Yeah, we'll get it out tomorrow -- by

 6      tomorrow.

 7              THE COURT:  All right.

 8              MR. CHING:  Thank you so much, Judge.

 9              MR. NOTHSTEIN:  Thank you, Your Honor.

10              MR. EVANS:  Thank you, Your Honor.

11              MR. BREINER:  Thank you, Your Honor.

12          (Proceedings concluded at 3:24 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

I, Jessica B. Cahill, court approved transcriber, do hereby certify that pursuant to 28 U.S.C. §753, the foregoing is a complete, true, and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated: July 1, 2019

_____

Jessica B. Cahill, CER/CET-708